Our next case on calendar is Betty's Foundation v. Trinity Christian Center, 21-55553. Each side will have 10 minutes in this case as well. Good afternoon, Your Honors. Or, good morning, excuse me, Your Honors. May it please the Court. My name is Bill Blakely, and I represent Appellate Betty's Foundation. I'm also glad to be doing this back here doing this in person. I would like to reserve two minutes for rebuttal, if I may. Your Honor, today this Court is being called upon to address an issue of First Impression. No appellate court has ever ruled on the applicability of, well, whether the Rogers test should be applied in cases of reverse confusion, and if so, how. Here, the District Court erred when it rigidly and incorrectly applied Rogers in a case of reverse confusion. Specifically, just to get the point, I'll just read exactly from the Court's order. The Court held that the Lanham Act applies only if defendants made explicit indications of overt claims or explicit misstatements about the source of the work. Now, Your Honors, in reverse confusion cases, you rarely see that in a reverse confusion claim. It seems like Rogers is designed to protect First Amendment interests, and I don't really understand why the First Amendment interests would be different for defendants, because it's a reverse case. It's not. In Rogers, it's a balancing. I mean, since, I think it was 25 years ago, I argued that Bruce was having a Romney-Fitch case before this Court, and what you're dealing with are both legitimate and competing interests. And Rogers was the Second Circuit's attempt to deal with that in the context of expressive work. And I think Rogers is a viable test, and I think you do need a balancing test to deal with these legitimate and competing interests. So what is your reason for why reverse confusion cases strike a different balance? Is that just because it's harder to meet the explicitly misleading prong? It's a possible, Your Honor, because in reverse, and this Court just stressed this. But you agree that that's true in both reverse and forward confusion cases, right? It's difficult to meet that test. Oh, it's an exacting standard, Your Honor. Right, so it's supposed to be difficult to meet, and it's difficult to meet in both reverse confusion and forward confusion cases. Would you agree with that? I would agree with that, Your Honor. Right, so then what's the basis, then, to have a different test for reverse confusion? It shouldn't be impossible. Well, all right, two questions there, Your Honor. There should be a balancing, just as in Abercrombie, just as in all these other, just as in Gordon, there should be a balancing of rights in a reverse confusion, Well, as this Court just reiterated in the iron and hot ruling that came down in February of last year, reverse confusion is an entirely different animal than forward confusion. In reverse confusion cases, the junior user is not trying to siphon off the goodwill of the senior user. In a reverse confusion case, the junior user, which is usually a much larger entity, basically decides, basically swamps the market with its own market, you know. Is there any case that says reverse confusion cases should have a different standard and test for analysis than forward confusion cases? Or does that have to be the first one? Your Honor, I can cite to about 20 of them, not only in this circuit, but in all the other circuits. As to a different Rogers test or different First Amendment standard? As Your Honor, as I pointed out at the beginning, this is the first time a court of appeal has addressed this issue in the context of Rogers. So the answer to Judge Koh's question is no? No. Your Honor is going to be making law today. This is the first time a court of appeal in any circuit has addressed this issue. You've had some district courts, I know there's a case up in Washington that's been cited that the court selected shouldn't even apply. There's a case in Colorado that says, like Rogers said, you know, district courts are doing all sorts of things. But this is the case of first impression. And Your Honor, Judge Koh, to get to your point, in a reverse confusion case, and again, I would address your attention to Ironhock. I'm looking at your brief where you discuss this reverse confusion, and I don't see Ironhock mentioned here. I'm looking at pages 36 through 9. I'm getting it. It's wrong here. I don't know. Ironhock was a drop box. I don't know. I don't see it. This is your reverse confusion argument. I don't see it here on pages 35 through 40. But I could ask you another question. Let's say we're not going to, let's just hypothetically assume that the reverse confusion argument is not necessarily persuasive to the whole panel. Why would the Gordon test apply if titles are generally not source identifying? Pardon me, Your Honor? Why would the Gordon test apply if titles are generally not source identifying? The Gordon test, well, so are we getting an expressive work, whether it's an expressive work, Your Honor? Okay, let's assume, I'm going to give you a hypothetical. We're assuming that the trademark is used as part of an expressive work. Okay? We are assuming you've conceded that the trademark is not, you're conceding the artistically relevant prong of Rogers, and then we're just getting to the explicitly misleading prong of Rogers. Yes, Your Honor. And so then we have the question of whether 20th Century Fox applies or whether the Gordon test applies. So I'm just. Well, I think, Your Honor, again. I mean, let me ask you, under 20th Century Fox, would you concede that you would lose if that's the test? Because there's no overt claim, there's no exquisite reference to Betty's in Trinity's use of the mark. I think if Your Honor are going to rely on all the cases we've decided before Gordon, it would be a very hard standard to overcome if it's a stage owner. Okay, so then let's go to Gordon. Why does Gordon apply? And if Gordon applies, why do you win? Gordon. First thing, in Gordon the court stated several things about the Rogers test. First thing, it's back consensus. Second thing, you look at the totality of the circumstances. And third of all, it's a balancing of legitimate rights. It shouldn't be an automatic safe harbor. And so what the Gordon court did is it backed away from a lot of the prior precedents saying you need to have an explicitly misleading statement. So it's talking about the test in its entirety. And that really puts it in line with how they look at it in the Second Circuit. It's really a more exacting likelihood of confusion analysis. But how could you meet the Gordon standard? I mean, the facts in Gordon are basically that, like, the trademark is almost the entire product. Whereas here you have your trademark maybe in the title, but the music is different. The show is different. The content is very different. Your Honor, there are other elements in the Gordon case as well. I mean, that was kind of akin to my, I argue, Paris Hilton versus Hallmark revealing the greeting cards. The other was barred by the First Amendment, probably 15 years ago. And there are a lot of other elements to those greeting cards. And the Gordon court addresses that. It used the variations of honey badger, don't care, you know, the slogan. But there are other elements to it. And what the Gordon court said is, look, you need to look at the totality of the circumstances. This is a factually intensive case. But the totality there, the point was, this entire thing is copied, basically. I mean, that's how I understand the totality analysis in Gordon. So how do you meet that? You can't say that here, right? They used the logo as various parts of these greeting cards. Just like in Paris Hilton, in my case, the greeting card had her picture, but they were trying to parry it. And, you know, even then the court held that, no, it's not subject to anti-slap. It's, you know, there's a question of fact. Here, how do we get by this? First thing, under the Gordon test, the court, and there's one, even under a Ford-Confucian case, the court here misapplied Gordon. The court said, you look at all of these factors. And the things you look at are, look at the degree of use. It doesn't have to be identical. You look at the degree of use. That's one factor. You can look at whether it's explicitly misleading or not. That's another factor. And that's what I'm saying with regard to reverse confusions, Your Honor. You're never going to have. Can I ask a follow-up on Judge Friedland's question? What is similar? What is similar about your use of the mark or your client's use of the mark and Trinity's, the defendant's, use of the mark? Because, like Judge Friedland said, if one is a TV show that has interviews, that has sort of the life of the, you know, musician and their relationships and then has some snippets of some live concerts, how is that the same as your live charity fundraising company? Certainly, Your Honor. My client uses. This is not some of the completely disparate contacts that Gordon gave examples of. This is not like a quicksilver company, quicksilver. I'm assuming someone put her out in quicksilver tow truck company. What you have here is my client uses its incontestable trademark, remember the music, in connection with music concerts, which raises money for charity. As the USPTO held in this case, which is a critical factor in a reverse confusion context, by the way, Your Honor, because it's not the intent to trade off of someone's goodwill. It's they have knowledge of a mark and then just roll over it. That's the knowledge element as you'll see in Ironhawk. Anyway, the Fenton, after approaching my client and being rejected from my client to collaborate on this, decided to do a series of music concerts with Fenton who would rebroadcast a package as remember the music and then give some proceeds for charity. And by the way, I just do want to make a point.  I mean, again, I would urge you, and I'll send a letter to the court with you, and it might have answered your question. It might have been ruled on after I wrote my brief. But it goes back to a long, it cites to a long series of cases on the Ninth Circuit how reverse confusion is an entirely different animal. It needs to be looked at that way. And just as the Ninth Circuit alters slave craft in the context of forward reverse confusion, it should also look at Rogers in that same light. And yet another case already never got an issue. I think I need to cut you off because you're over your time. I'll still give you two minutes for a rebuttal, but why don't we hear from the other side. Thank you. Good morning, Your Honors. Stanley Penikowski for the Appellees Trinity. Your Honors, the first question that appellant raised at argument today is both waived and already answered by this court's precedent. First, the waiver. In appellant's opening brief, appellant did not file a reply brief, appellant never argued that Rogers should not be applied at all to reverse confusion cases. On page 24 of appellant's opening brief, appellant simply argued applying Rogers, quote, as is to the present case is tantamount to forcing a square peg in a round hole. On that page and at pages 36 to 41 of the appellant's opening brief, appellant simply argued for applying a modified version of the slave craft test in place of the second prong of the Rogers test, the explicitly misleading prong. However, this court has already held in 20th Century Fox that the only threshold requirement for the Rogers test is an attempt to apply the Lanham Act to First Amendment expression. Your Honors, that holding itself already resolves this issue of whether reverse confusion is subject to the Rogers test, even if the issue had not been waived. Next, Your Honors, with respect to the argument that appellant did make in its opening brief that there should be some sort of modified version of the likelihood of confusion factors applied here, this court has already. Let me ask you a question. Let's say we assume it's part of an expressive work. We assume Rogers test applies. We assume Gordon test applies. Why would your client win if we think the uses of the mark are in a similar context? One is a charity fundraising live concert. Another one is a streaming of a charity fundraising live concert as part of a TV show. Let's say we say that's the same context. Why would you win under Gordon? Your Honor, making all of those assumptions, my client would still win under this court's holding in comic mix. In Dr. Seuss Enterprises v. Comic Mix, Your Honors, which was decided on the pleadings like this case and which postdated Gordon v. Trey Creative, what we had here was in even more similar context than what Your Honors' question posits. What this court said in Comic Mix is here, Comic Mix has used the marks in an illustrated book just as Seuss did. This court also pointed out that the accused work boldly even used the Seussian font in the cover, the Seussian style of illustrations, and even a title that adds just one word boldly to the famous title, Oh, the Places You'll Go. However, this court in Comic Mix still held as a matter of law that the plaintiff had not satisfied explicitly in the misleading prompt because the accused work had, quote, added expressive content to the work beyond the mark itself. And the court also went on to identify a disclaimer which further dissociated the words. But you don't have a disclaimer here, right? Your Honor, we do not have an explicit disclaimer, but what we do have, as shown by the plaintiff's own second amendment complaint on page 125, is a screenshot where it shows TBN being used in association with Remember the Music. That is Trinity's housemark that identifies that it is Trinity that is presenting this TV show, and it's not the plaintiff. Do you agree that Trinity is promoting these charity fundraising live music concerts with the Remember the Music mark? No, Your Honor. Just as the district court ruled, we do not believe that that is a fair characterization of the plaintiff's complaint. Plaintiff tries to use conclusory labels, which this court disregards under Twombly and Iqbal, to somehow suggest that this was a Remember the Music concert series. But when you look at the plaintiff's actual allegations, plaintiff is forced to concede that Trinity never used Remember the Music in connection with any individual concert. They say that in the excerpts of record, page 121, paragraph 23, and page 124, paragraph 30, where they say, okay, fine, one of the concerts was called Music, Moments, and Memories, but when Trinity broadcast the concert as part of its TV show, the TV show, was called Remember the Music. Let me ask you. Let's say you just broadcast live music concerts with the Remember the Music mark in a TV show. Would you say that then is the same context as what Betty's Foundation does? Your Honor, no, that would still not be the same context. Why? Because, Your Honor, you would still have a difference where you have Betty's with its charitable fundraising music festival to raise funds for Alzheimer's disease, and then you would have a situation that you have posited where Trinity is broadcasting these concerts that celebrate Christian music. So the question is, Your Honor, what is the difference? But Betty's is also broadcasting on YouTube and Instagram and Facebook and radio, so what's the difference? Your Honor, there is some degree of similarity of the context under the hypothetical you posited. It's not as close as the identical context that you had in Comic Mix. And also, Your Honors, when you look at this issue of context, that is a concept that Gordon v. Drake Creative injected into the analysis, and when we look at the level of granularity at which Gordon v. Drake Creative identified the same context, it was quite specific. What the court in Gordon said made the two uses in the same context was that they were both, the plaintiff and the defendant, using the trademark phrase in humorous greeting cards, and not just in humorous greeting cards, but to identify the source of humorous greeting cards whose bottom line was the trademark catchphrase, honey badger don't care. And therefore, Your Honor, when you're examining what is the same context, you do look at that degree of granularity, but even here, Your Honor, even if you were to treat this as a case that was more toward the Comic Mix end of the spectrum in terms of context, which for the reasons we stated in our briefs, we don't agree that that treatment is appropriate, you nonetheless look at what else Gordon said about titles. One, Gordon said, as this court had also stated in its prior precedent going all the way back to MCA records, that consumers don't ordinarily expect titles to identify the source of the work. They typically look to titles for messages about content and not messages about origin. And this court in Gordon also said that when you're dealing with the title of an expressive work, like a TV show, which we had here, which we had in 20th Century Fox versus Empire, you're going to have much more expressive work beyond just the use of the trademark itself. And so Gordon itself takes a case like this, where the assertive mark is being used. What's your best argument as to whether Gordon applies or not at all? Your Honor, Gordon does apply in the sense that it is part of the body of law here, but Gordon doesn't require a different result from the one that the district court reached. So do you think we have to do both, the 20th Century Fox analysis and the Gordon analysis, like they did in Dr. Seuss? Your Honor, those two are not different analyses. What Gordon versus Trey Creative did is to take the explicitly misleading prompt of the Rogers test and explicate what that meant in what Gordon itself called a case that tested the outer limits of Rogers. And the reason why that case tested the outer limits of Rogers is because you had the use of the mark, honey badger don't care, and virtually no other expression, as the court said. And you had that placed in identical uses, humorous greeting cards, where that catchphrase was bottom line. And Gordon didn't overrule the explicitly misleading prompt. In fact, as a panel decision of this court, it couldn't do so, even if it had tried. It simply rejected the district court's test as being too inflexible. The district court had required an affirmative statement of endorsement or sponsorship. And the Gordon court said, no, when we apply the explicitly misleading prompt, we need to be more flexible than that. And they gave the example of a Mickey Mouse painting that might have the Disney trademark. Let me, so your position is that Gordon shouldn't apply here because this is not the outer limits of Rogers? Is that your position? And then we just do the 20th Century Fox analysis? Or I guess I'm unclear. What's your position? Your Honor, our position is that both Gordon and 20th Century Fox do apply here. That Gordon is not articulating a different legal standard. But our argument is that this case does not involve a factual scenario that is even remotely close to what the court had in Gordon. Here we have the use of remember the music. But didn't 20th Century Fox say there had to be an overt claim or a direct reference to Betty's Foundation? And Gordon said we reject that the defendant has to make an affirmative statement. So why wouldn't that be a rejection of the overt claim requirement of 20th Century Fox? Your Honor, some commentators and some amici in other cases, not currently before this court, have actually argued that there is some conflict between Gordon and this court's prior precedent in cases like Brown and 20th Century Fox. However, I think that to the extent this court is seeking to reconcile those precedents, as this court did in Comic Mix, you have two bases on which to make that distinction. One, Gordon is involving an outer limits factual scenario, which for the reasons explained in our brief and discussive argument today, we have nothing remotely resembling that here. In fact, this case is an a-fortiori case of Comic Mix. When you look at the near identity of context that you had in Comic Mix, certainly here, even under the most charitable reading of the complaints allegations, have less similarity here. Can I ask you about that before you go on to the next point? So in the Dr. Seuss case, you have the Star Trek mixed with Dr. Seuss. And the importing of the Star Trek kind of makes it seem to the reader that this isn't Dr. Seuss anymore. I mean, maybe there could be confusion, but basically Dr. Seuss isn't writing anymore about Star Trek. So now here we have these music things where I'm not sure it's so obvious that the Alzheimer's fundraiser couldn't show Christian music. When you read the Dr. Seuss book, the point is there was a disclaimer and it's just not Dr. Seuss. There's not really confusion when you read that book. Here, there could be confusion. So how do we know we're not in the Honey Badger situation? Your Honor, I would like to make two points in response with respect to Comic Mix. First, the way that Your Honor characterized Comic Mix is not entirely consistent with the way that the panel in Comic Mix itself characterized it. There was a whole discussion and holding on the issue of there being no copyright fair use that talked about the extensive similarities. But more important, Your Honor, in Comic Mix, when the court turned to the trademark inquiry, the court really did emphasize the similarities are not just that they were both using the marks in an illustrated book, but that, again, the defending Comic Mix was copying the Seussian font, the Seussian style of illustrations, copying the title and just adding one word to it. So in that sense, Your Honor, Comic Mix is very applicable here. And then turning to the other aspect of Your Honor's question regarding Gordon, here you need to look at the entire expressive work in order to have the context here. And this is clear from the 20th Century Fox case itself where the court said that what you look at is the use of a title in an expressive work as part of an expressive work, as the court said, in Gordon. And what you have is not just the use of Remember the Music in the title of a TV show, but you also have all of this other content with the songs, the interviews. In the excerpts of record at page 125, there's a screenshot that then my client put in the entire webpage at ER 113 where it said, Remember the Music highlights the friendships legendary CCM artists have maintained over the years, their faith and journey in music. And therefore, you have an enormous amount of expressive content in Trinity's Remember the Music TV show that's very, very different from anything that Betty's Foundation has alleged about the expressive content of their Remember the Music Alzheimer's Fundraising Music Festival. And that is why Your Honor. Well, I realize it's different content. Like, it's different performers and they have different content. So it is very different expression. But is there anything characteristic about them separately that would tell an observer that they couldn't have been from the same source? Your Honor, there is very different context when you look at the complaint and look at what has been presented. Someone would encounter Trinity's Remember the Music title as part of a Trinity Broadcasting Network TV show. We're presenting that Remember the Music TV show on TVN.org. And so you would immediately see all of that context of this is a television show that's talking about the lives and the music of various Christian artists, whereas all that Betty's Foundation alleges in the complaint about Betty's Foundation's activities is that it's a music festival held annually since 2009 to raise money to attempt to cure Alzheimer's. So you do have, based on the complaint alone and the documents incorporated by reference, as this court said is appropriate under U.S. v. Ritchie, you actually have, even just on the pleadings, a rich sense of how different the contexts are here. And that stands in sharp contrast with Gordon, where, again, the court said all you had is the defendant with the same product, greeting cards, knowing that consumers typically identify the source of greeting cards based on what's inside. And then you have little other expressive content beyond the use of a catchphrase, honey badger don't care. And, Your Honor, for the reason I explained, this case sits far apart from Gordon, and Gordon is at the outer limits. This case is well inside the outer limits. It's even farther inside connotments in terms of a case where Trinity has a First Amendment defense. The plaintiffs trademark claims as a matter of law. Thank you, Your Honor. Thank you, counsel. Oh, sorry, Judge Korman. It's okay. I've been quiet all morning. I just wanted to ask you about this two-prong test. It uses, in the Rogers test, it's described as a plaintiff must show that the defendant's use of the trademark either is not artistically relevant to the work or explicitly misleads. In the Dr. Seuss case, the or seems to have been changed to an and, suggesting that both have to be satisfied. In other words, it says here comics has used the marks in an illustrated book, just as Dr. Seuss did. But unlike with the greeting cards in Gordon, Comics Mix has added expressive content to the work beyond the mark itself. And Comics Mix, in earlier language, suggests that it's enough if they've added expressive content to the work. It's sufficient for a defendant to succeed. I was just wondering what your view of this was, because you alluded to the Dr. Seuss case. A minute ago, I'm looking at what could be called the last paragraph of the opinion. That's a long one. In Dr. Seuss. Your Honor, in the Dr. Seuss v. Comics Mix case, this court was very clear that it is a disjunctive test for when the burden shifts to the plaintiff. And the plaintiff can prevail by showing, as the court said at page 462, that the use of the trademark is either not artistically relevant to the underlying work or explicitly misleads consumers as to the source or content of the work. The court in Comics Mix then goes on to say that Dr. Seuss cannot win under the artistic relevance prong. And so the court then turns to the explicitly misleading prong. And when the court assumes or suggests that the artistically misleading prong loses because of the added expressive content, I'm just trying to understand what the test is, whether there was any kind of a subtle change. Right. Your Honor, I don't believe that there was a subtle change in the test in that respect. The reason why this court in Comics Mix is talking about the amount of expressive content beyond just the use of the trademark in the title is because the court in Gordon v. Stray Creative said that that inquiry was part of the relevant facts and circumstances that one would look at when one is engaging in the analysis under the explicitly misleading prong. It doesn't in any way modify the artistic relevance prong nor make it a conjunctive requirement. And that leads back, Your Honor, to Judge Koh's question about whether 20th Century Fox and Gordon have two different tests. There are some important semantic differences in what they say, but again Gordon retains the explicitly misleading prong. And it doesn't disavow the fact that the explicitly misleading prong requires explicit indications, express statements, or overt claims. It simply says that it doesn't in every case have to be in the form of an affirmative verbal statement of endorsement like the district court had in that case. That's why the example of the Disney trademark in Gordon is so instructive. However, again, is this court recognized in comic minutes and is the court recognizing Gordon itself? That is an outer limits case that doesn't bear any resemblance to the facts here where we not only have different context, but even if you were to assume very similar context, you also have the fact that there are enormous amounts of additional expressive content beyond the mark itself. Thank you, counsel. We're taking over your time. Let's add extra time for rebuttal because we went long. So let's do five minutes for rebuttal. Just a quick comment, Your Honor. Contrary to what counsel suggested, I am not arguing that Rogers should not apply in this case. I'm arguing that it should be modified to fit the context of the case, which is what this court only does in cases of perverse confusion particularly, but in all sorts of other cases that argue, for instance, keyword advertising. You know, the court looks at the context of the use, and Judge Codd, who addressed your question earlier, Iron Hawk is discussed on page 35 of my brief, and it's in the section where it's on. Only as to some single statement about intent, though it's not really used to make the argument I think you were making today, is it? Well, it's for the argument that perverse confusion is looked at differently. I also cite Walter v. Mattel. I also cite an extensive section from McCarthy discussing perverse confusion. I also discuss the DreamWorks case, all stating how perverse confusion is treated entirely different in the context of the likelihood of confusion analysis. For instance, in a perverse confusion case, you don't look at the strength of the senior user's mark. Rather, you look at the strength of the junior user's mark to see whether or not it can overpower the senior user. Intent is not intent to trade off with goodwill. Rather, it is knowledge of the senior user's mark. And then just derolling the senior user because you don't care, which is what happened in this case. It's just theft. They just took my client's mark. Your honors, in connection with, and to get very specific, because the court earlier, your honors are correct, the Gordon court did make it, did back away from prior precedent and state that no, you do not need to have an overt reference. For sponsorship, it's a fact you can look at. Just like degree of use is a fact you can look at. You can look at all of these facts in the context of whether or not it's misleading. And where the court erred is the court created this kind of hybrid test that unless it's an identical use, if it's an identical use, you're fine. But if it's not identical, then there has to be an over-reference, explicit indication over-reference that the senior user is somehow sponsoring the junior user's product, which is not Gordon. That's just wrong right there, even in the Ford confusion case. Would you address the respondent's argument about how we should balance the relevant facts and circumstances under Gordon? The respondent emphasizes that they've added all this additional content, all this additional expressive content, and they don't think it's exactly in similar context. Your honor, what they did was they tried to register my client's trademark as a legal trademark. That's what they did, and the USPTO refused it because the USPTO said that it was confusing with my client's trademark. But then the USPTO ultimately did approve it, correct? We filed a lawsuit to stop them. We didn't fight them there. We're fighting them here. Understood. But ultimately, I understand that they initially refused the respondent's application, but ultimately the USPTO did approve it. The whole point of the USPTO is they had knowledge. They unequivocally had knowledge of my client's senior rights in that park, and as McCarthy instructs, when you have that knowledge, you either acquire that mark or you move on to something else. And they used that mark as the mark of their own television show. And, again, in a reverse confusion case, now, Saida Ironhawk at 1164-65 talks about this, that the use of a house mark in connection with the trademark in reverse confusion is an aggravation because it further adds to the ability of the junior user to swamp the senior user's mark and therefore lose control of its intellectual property. Reverse confusion is a different animal, and that's why, Your Honor, I mean, yes, Gordon and all these other cases give us guidance on how to look at the Rogers test in the circuit. But there's nothing out there telling us how to look at it in the context of a reverse confusion case. This is the first time a court of appeal anywhere has put pen to paper on this issue. So it's a clean slate, Your Honors. And factually also, I mean, this whole context thing, I'm looking at the excerpt from Web Group Page 7, which is the promotion of this series, which talks about TBN is, co-promoting the series with CNN, that's Mosher, the individual who approached my clients first, to produce these concerts, which it then will be putting in a TV show. So not only are they just slapping other TV shows a source identifier, they are co-promoting the concerts and putting out press releases advertising these concerts as a joint event to night's performances that will be captured for the second season of Remember the Music. They are involved in these concerts as well, Your Honor. And then one little point here is that there needs to be a balance. Right now, cases of reverse confusion are never going to have an overt statement that a senior user is sponsoring the much more powerful junior user's work. You're just not going to have that. You don't have that in reverse confusion cases. And so there's no balance. It's out of whack right now in a reverse confusion context. And so what I'm asking the court to do is put that balance back in place, reestablish the balance in the context of these reverse confusion cases. Yes, it can be an exacting test, but there needs to be a test where the senior user in a reverse confusion case actually has a chance. Right now, they have not. Thank you, counsel. Thank you on both sides. Oh, I'm sorry. Judge Clorman has a question. Sorry, Judge Clorman. I've done it twice now. I apologize. I should interrupt sooner. I just want to know, you used the word reverse confusion. I understand the reverse. But the way you defined it earlier in your argument, I didn't understand what the confusion was. You're just saying that the junior is overwhelming the senior's mark and thereby depriving it of its use of its property. In your reverse confusion, to use the term, I understand the reverse part. What is the confusion part of your definition? Certainly wrong. And if you look at page 36 of my brief, it cites McCarthy. McCarthy gives a very good explanation of what reverse confusion is and how it's different for confusion. But in a reverse confusion case, again, senior users or junior users are not necessarily trying to siphon off the senior's scoop well. Because a junior user could be like a target company that just sees an idea or a concept that it likes and takes it. Takes it as his own because it doesn't want to spend the time creating its own concept. That I understand. But you're talking about theft. You're not talking about confusion. I understand the reverse part. And I ask, what is the confusion part of reverse confusion? Here's where the reverse confusion comes in. Okay, someone sees my client's annual concert. And because TBN has gone out there and swamped the market. TBN, by the way, is the largest Christian broadcasting network in the world. Swamps the market with its own, remember, music market. People are going to think that my client is copying them or is derivative of them or somehow associated with them. And the thrust of reverse confusion, again, as I talked about in Ironhawk, is that basically the theft of my client's mark, my client loses control of its mark, of its brand, of whatever it is. They lose control of the mark. And so that's the difference with the reverse confusion case. It's not like I'm selling fake Nike shoes down in Santee Alley. So how are you prejudiced by that kind of confusion? In other words, that people will think that your client is really the sponsor of this Christian broadcasting program? What if some of the potential people who would donate to my client's charity hate TBN? Well, they wouldn't be watching it, right? Yeah. It's the reverse confusion. The harm is the theft of my client's mark leads to my client's lack of control of its intellectual property. That I understand. But that to me is not the case. It's a conversion case. It's not a confusion case. And I just want to – I'm not arguing with you. I'm just trying to understand the definition of confusion when you say reverse. The reverse part I understand. It is a – I want to know what the confusion part is. It is a confusion case, Your Honor. Yes, it's trademark infringement is a type of conversion. But it is a confusion case. And it's been recognized in this circuit for a number of years. And I just argued a reverse confusion case in the Second Circuit a couple years ago. You know, it's, you know, in your jurisdiction as well. It is a long true tried and tested theory of trademark infringement. And, again, the harm is, the harm is, again, that my client loses the confusion. And consumers are going to think that my client is somehow ripping off TVN or associated with TVN or came after TVN. That is the confusion. And McArthur gets into that. They would say, well, why wouldn't a junior user want to be associated? There's a lot of reasons. Namely, they want to be able to control how their brand is portrayed and how their mark is being used. And when someone hijacks that, they lose control of their mark. I hope I've answered Your Honor's question. I would urge you to read McArthur. It's actually very good discussion on that issue. Okay. Great. Any other questions? Thank you. Thank you both sides for the very helpful arguments. This case is submitted and we're adjourned for the day. All rise.
judges: FRIEDLAND, UNKNOWN, Korman